TOM HUSTON PEANUT CO. v. BATTLE CREEK BISCUIT CO.

1. CONTRACTS—RETURN OF STALE MERCHANDISE—FINDING OF COURT.
   In action of assumpsit by distributor against manufacturer for breach of an oral agreement relative to return of merchandise which had become stale or unsalable while in hands of retailers, record *held*, to sustain finding of court that redemption was to be made without return of goods to defendant as had been required under previous trial agreement, unsatisfactory to plaintiff.

2. SAME—CONSIDERATION.
   In action by distributor against manufacturer on alleged oral agreement that redemption of perishable merchandise which had become stale or unsalable while in hands of retailers should be made without return of goods to defendant, latter's claim of want of consideration therefor *held*, without merit, where previous trial agreement as to sale of goods, which required return and acceptance of such goods by defendant, was continued only in consequence of such subsequent oral agreement.

3. Damages—Excessive—Redemption of Stale Merchandise.

    In action to recover money paid for redemption of defendant's stale goods, award of damages *held*, not excessive where letter, claiming goods should have been returned, did not attempt or assume to terminate contractual relation, substantial portion of goods redeemed after its receipt had been placed with retailers prior thereto and defendant was liable for redemptions regardless of the letter.

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted April 5, 1935. (Docket No. 110, Calendar No. 38,381.) Decided May 17, 1935.

Assumpsit by Tom Huston Peanut Company, a Georgia corporation, against Battle Creek Biscuit Company, a Michigan corporation, for sums expended in refunds on unsalable goods. Judgment for plaintiff. Defendant appeals. Affirmed.

*Cyrus J. Goodrich,* for plaintiff.

*Frank H. Pearce* (*Ellmann & Rosin,* of counsel), for defendant.

North, J. In a suit in assumpsit tried before the court without a jury plaintiff had judgment against defendant for $2,577.52 and interest accrued in the amount of $176.82. Defendant has appealed. Appellant's principal contention is that the plaintiff did not establish its right to recover by a preponderance of competent testimony.

The defendant company is a Michigan corporation engaged in the manufacture and sale of various kinds of confections and biscuits. Its products are of such a character that if they are not disposed of with reasonable promptness by the retail merchants through whom they are sold they are apt to deteriorate and become unmarketable. The plaintiff

company is a Georgia corporation with its principal place of business at Columbus, Georgia. Through numerous distributors located in various places in the southeastern and southern portions of the United States it sells and delivers to the retail trade merchandise of a different character than defendant's but also of a semi-perishable type. Because of this character of plaintiff's business it had an established method of merchandising its products through its various distributors under an arrangement whereby its merchandise which became stale or unsalable while in the hands of the retail merchant was repossessed by the distributors and the merchant repaid the purchase price by the plaintiff company. Following some correspondence between these parties, the president of the defendant company went to Columbus, Georgia, and there orally reached an agreement whereby plaintiff company through its distributors was to sell and deliver defendant's products to the retail trade in the territory covered by plaintiff's distributors. Subsequently the details of this arrangement were confirmed by letters exchanged between the parties. Immediately thereafter defendant's products were placed in the hands of a limited number of plaintiff's distributors and for a few weeks the plan of marketing agreed upon was tried out on a so-called "test basis;" it being understood between the parties that if this test proved satisfactory to both, plaintiff was to have in its territory the exclusive distribution of defendant's products. The controversy between these parties is whether defendant is obliged to repay to plaintiff money which the latter paid to retailers for defendant's products which, because of their becoming stale or unsalable, were repossessed or picked up by plaintiff's distributors. In the correspondence

confirming the first agreement entered into between these parties this phase of the transaction is stated as follows:

"We (defendant company) guarantee the salability of all merchandise to your agents, and we will accept for full credit all returns and will refund the money to your agents. Acceptance of such returns must be only made at the authorization of our company, and all returns to be sent back to us, prepaid, provided such returns will not indicate that the products were totally bad, or that the merchandise has gone bad. Such merchandise, we will accept, collect. Of course, you understand, we make this provision so that the agents will not over buy and entail a lot of expense to our company."

It was found that defendant's merchandise was susceptible to a rather marked degree of deterioration due, at least in part, to climatic conditions in the territory covered by plaintiff's distributors. The initial campaign testing the feasibility of marketing defendant's products in accordance with the agreement first entered into disclosed that the plan was unsatisfactory to plaintiff. In the latter part of April, 1932, defendant's president made another trip to Columbus. It is plaintiff's claim that at this time a second oral agreement was entered into in accordance with which plaintiff was to continue to market defendant's products and in that connection was to make the same guarantee to the purchaser as plaintiff made concerning its own goods and was to use the same method of picking up or reclaiming such goods as became stale or unmerchantable while in the hands of the retailer and pay the retailer for same. Plaintiff's contention is thus stated in its brief:

"Appellee contends that the parties agreed in April, 1932, that appellee would make allowances to

its distributors for stale and unsalable merchandise purchased by its distributors from appellant in the same manner it customarily made such allowances to its distributors on its own merchandise, and would give credit or pay such distributors for such allowances on appellant's merchandise and that appellant would reimburse appellee for such allowances so made."

On behalf of plaintiff it is claimed that under this latter arrangement plaintiff's distributors were authorized to repossess from their customers defendant's merchandise that had become unsalable and through plaintiff to reimburse such customers without the approval of defendant company and without the goods being returned to defendant company.

Appellant denies that the alleged supplemental oral agreement was entered into. A detailed review herein of all the testimony pro and con upon this issue would serve no purpose. The parties who actively participated in consummating the arrangement appeared in person and testified before the trial court. Numerous letters of the defendant company were received in evidence. The method by which the parties actually transacted the business subsequent to the alleged oral agreement and records of such transactions were also disclosed. On this appeal we are favored with a careful review of this testimony contained in the trial judge's opinion covering upwards of 20 pages of the record in this case. Consideration of this record fully satisfies us that the trial judge was correct in finding that plaintiff established its contention as to the issue above noted.

Appellant's contention that there was no consideration for the second oral agreement cannot be sustained. It was only in consequence of the subsequent

oral agreement that plaintiff was willing to and did in fact continue to handle defendant's merchandise.

Appellant asserts that the judgment rendered is excessive. The claim is that the judgment should not include moneys paid out by plaintiff for redemption of stale goods after October 3, 1932. This contention is based upon the fact that defendant on the date just above noted wrote plaintiff a letter in which it claimed plaintiff should not have a credit of this character amounting to $931.44 because the redeemed merchandise had not been returned to defendant. The letter does not attempt or assume to terminate the contractual relation between these parties. While the exact amount cannot be determined from this record, it does appear that a substantial portion of defendant's merchandise redeemed by plaintiff through its distributors after the receipt of the letter of October 3, 1932, had been placed in the hands of retailers by plaintiff's distributors previous to October 3, 1932. Defendant was under legal obligation to redeem all such merchandise if it became stale or unsalable while in the hands of the retailer. On this account and also because of the fact that defendant's letter of October 3, 1932, does not attempt to terminate the contractual relation between these parties, the trial court was justified in permitting plaintiff to recover for money paid out in the redemption of defendant's stale goods, regardless of whether the redeemed merchandise was delivered to the retailer before or after October 3, 1932.

Our review of this record satisfies us that the trial judge arrived at a just result and the judgment rendered in the circuit court is affirmed.

POTTER, C. J., and NELSON SHARPE, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.